Case number 20-3930 WCI Inc v. Ohio Dept of Public Safety et al. Oral argument not to exceed 15 minutes per side. Mr. Cicero for the appellant. Good afternoon. Good afternoon. Good afternoon, your honors and may it please the court and minutes and above. Very well. This case originated in front of the Ohio Liquor Control Commission. A hearing was held on a Rule 52 violation. At that time, WCI raised its England reservation properly. It's received a decision that it appealed to the District Court of Appeals in Franklin County. It then reserved its England reservation of rights again. It appealed to the 10th District Court of Appeals of Ohio. Again, reserving its England reservation of rights and then filed a memorandum in support of jurisdiction from the Ohio Supreme Court, which was rejected and then filed the instant lawsuit. The complaint, which states right in the caption that it is a complaint for declaratory and injunctive relief, was filed in the United States District Court here in Dayton, Ohio. It was dismissed once previously. We appealed to this court. This court reversed the District Court and said that the District Court was incorrect in believing that we were in fact challenging the constitutionality of Rule 52, but we were in fact making constitutional arguments as to why the procedures that were employed were unconstitutional. You've indicated your complaint says it's for declaratory and injunctive relief, although the prayer for relief says something about damages. So what kind of damages are you seeking? Attorney fees are requested therein in the provision of the prayer for relief. Are you seeking any damages? And with respect to the fine that was paid, the $25,000 fine, are you seeking any restitution or remedy with regard to that fine? The body of the complaint itself, the caption of the complaint itself, all talks about the unconstitutionality of the process and the specific manner in which the fine and the amount of the fine was levied against WCIA. What declaratory relief are you seeking? We are seeking relief that says that the Liquor Control Commission should not have unbridled discretion. Each one of the counts in our complaint starts with that very phrase, and it says that the Liquor Control Commission has the unbridled discretion to do what it did in this case and to any other liquor establishment, gentleman's club as in this case, throughout the state of Ohio. What are you seeking to impose in place of unbridled discretion? We are seeking to impose constraints which give liquor establishments notice as to what would happen in the event of a violation. Those specific constraints are not outlined within the complaint, but are prayerful. I would note that the discovery is still ongoing in this case. Now, my reading of the complaint is that your client alleges that it is in compliance with Rule 52. Is that correct? Our complaint alleges that we are in compliance with Rule 52? Yes. Absolutely. It's not alleging the... In front of the liquor board, there was a denial with a stipulation, and the stipulation we agreed to was the report that was done by the officer. WCI does everything in its power, and that's what we presented to the Liquor Commission. Everything in its power to stay in compliance with Rule 52. And your complaint, is it also fair to say your complaint alleges that your client intends to remain compliant with Rule 52 in the future? It does, but it also states that it was just right before this case subject to a similar action, and it's doing the same... It was doing the same things then, and that it is still subject to potential risk. So, what is the harm that is being alleged in your complaint towards your client that's being done by the defendant? The harm is... Well, first and foremost, I would say, would be the excessive and extraordinary fine that was issued, like we stated, in an unbridled fashion, which is essentially arbitrary, which is capricious. And because there are no procedural constraints on the liquor board, that's why we had this excessive fine as it is. And that every other gentleman's club in the state is subject to the same potential arbitrariness, capriciousness, and excessiveness that occurred to my client. Does your complaint allege any other harm besides that one you just articulated? When this court remanded... This court only remanded five of the eight counts. We also alleged First Amendment and Equal Protection violations, the stifling of First Amendment activity. Those were dismissed, basically, on an Iqbal-Twombly analysis. I'm just asking about what... What's left in the case? Have you articulated what the harm is for the claims that are left in the case after the remand? Yes, I believe I have, Your Honor. Okay. Our brief in this case lays out where we think the district court went wrong again here, and that is in its failure to recognize the implications of Nick versus Township of Scott. And its implication in this case. The district court seemed to be still looking to San Remo. And I believe that the San Remo decision, San Remo versus San Francisco, that decision is called into question by the United States Supreme Court's analysis in Nick versus Township of Scott. In actuality, I think what the United States Supreme Court was doing is saying that this court was exactly correct with the DLX case, and having the issue preclusion exemption that existed for these very cases in that case. San Remo, of course, overruled DLX. But Nick brings that all back into play, what this court so rightly found in the DLX case. And that is given very little mention by Appalese in their brief. And it was not that the case which came out in 2019, I believe, is not even mentioned by the district court. So issue preclusion, sovereign immunity, the Rooker-Feldman doctrine, the England reservation. The England reservation was done properly in this case. And so therefore, the sovereign immunity, the Rooker-Feldman doctrine, they have no application to this case. Another very important and improper term that the district court did in this case was by looking to the state court of appeals decision, which, quote unquote, summarized our arguments to them, stating that we had essentially implied that we had essentially litigated these issues before them. The magistrate's decision rightly acknowledged that to analyze whether or not this matter was litigated such that issue preclusion or claim preclusion would apply. And this is, of course, separate and apart from a Nick analysis. But it said that that would be improper at this point because we would need to see the briefs. Essentially, a Liquor Control Commission case is one in which it is just briefed the appearance in front of the liquor board. The transcript of the liquor board clearly shows the nature of our reservation of rights. Our briefs to those courts specifically state that we are not litigating these. They're not part of the record, but I would love to quote this court some of those provisions if the court would like. But we clearly did not raise, as the district court implied, or litigate or whatever that term may mean in this context to the court of appeals. And it would be hard pressed for any thorough analysis to say that we could have even done so if we wanted to. The Henry's Cafe versus Board of Liquor Control Commission of the Ohio Supreme Court has made it of any penalty, essentially, that is issued out by the Liquor Control Board. That is the essence of what we are challenging. And I would go so far as to say, although we haven't done so, is that Henry's Cafe may very well be unconstitutional under the Fifth Amendment to the United States Constitution, as well as the Eighth Amendment to the United States Constitution. So any attempt, even if we tried to do so, to litigate these matters in the state court would have been futile pursuant to Ohio Supreme Court precedent. So to state, as the district court did to us, that we improperly litigated this matter based upon a summary from a court of appeals decision of our arguments, which did not cite us directly as to what we were doing. We were simply preserving our England reservation of rights in our brief, as we were required in order to file this litigation in this court. So whether Nick, in fact, overrules San Remo, that's a question that I think is very legitimate. I would argue that Nick certainly does. But even if it does not, we did not litigate this. Issued preclusion should not apply in this case, and this matter should be remanded, just as the magistrate's decision says that it should have been alive and well in the district court. I would reserve the balance of my time. Thank you. Thank you, Mr. Cicero. Mr. Carney. Good afternoon. May it please the court, Stephen Carney for Ohio's liquor officials. One key point helps to break down all of the mutations this case has gone through, whether it's excessive fines and due processes of the claims, or whether the defenses are Article III immunity standing, or the backup of Rooker Feldman that's now fallen away. And that's this, we have to keep a laser precision focus on the relief they seek. Because two years ago, they were openly embracing the idea that they were questioning the fine they received, whether it was excessive, or whether they had not received due process. But now I appreciate that my friend on the other side, despite the complaint attaching all the things below, and despite all the rhetoric about what happened in the past, is saying, we don't want that money back. We're not attacking the fine. They paid it. They're not asking for rebate or refund. So that's gone. They only want a forward looking injunction that we don't do it again. And because they've pivoted to this forward looking claim, we have to because all of the things this court asked to remand were because we took it at famous word about the backward looking part, and the district court and this court took it that way. We've thoroughly concede Rooker Feldman only applies, and therefore the England reservation as a sub part of Rooker Feldman, or preclusion, any of that only applies to the extent they want to relitigate the old fine. If they're just throwing that out, and they're saying as an example of that shows what we might face someday, well, Rooker Feldman does not bar their forward looking relief. We admit that the problem with their forward looking relief is that they say we're never going to violate again. But if we do, then we're going to get hauled in on a process, which they don't even attack as far as public safety department. They don't say citations are unfairly issued. They don't even have a Matthews forward looking claim about whether they get to call witnesses because they do whether they get enough notice and hearing. All they're saying is, but the commission will at the end, have an unfair fine imposed against us. And the appeals courts in Ohio won't review the fine as a freestanding reasonableness review. Well, that is not an injury was just getting a citation. Sure. They might allege that someday they'll get a citation, but they're claiming they'll get hit with too high a fine. If they're not attacking the past one anymore, there is nothing going forward to attack. There is nothing that they face an imminent fine on the case has been going on, you know, for years and years. I'm not aware of any other one pending against them. They don't have an ongoing imminent threat that they will be subject to an excessive fine. The other thing your honor is that counsel, could I ask you would, would they have an argument that even though they're not going to violate rule 52, they have to be so careful to stay away from that line that their argument? No, your honor, because what their own allegation is, is that if they don't, um, obey the law, well, then they don't have a, they don't have a complaint that the law is being unfairly used against speech. They say we're not challenging where the line is between conduct and speech and they don't challenge the due process they will face on whether they commit a violation. If they somehow, even if you grant for the sake of argument that they will get an unfair citation, they'll be vindicated before the commission or they'll be vindicated on appeal to the state courts because there's no violation if there's not an actual liquor law violation. What they're saying is, yeah, if you catch us and if we do break the law on conduct, on things that are not protected by the amendment, why the final be too high down the road in the future if that eminence problem that the idea that, and that's just like the LA versus lions case from the U.S. Supreme court in the early eighties, where someone wanted to challenge a choke hold, um, and say, well, I do have this separate damages claim, but forward-looking, if I commit a crime again, and I get arrested, they might use this choke hold on me. And the Supreme court said, that's not enough because that's, if you break the law and if the cops do this, and if that happens, that's too far down the Lujan line to say, that's something you imminently face. There's no claim of an imminent excessive fine. And also it's important to note the magistrate here said, yeah, you've got nothing backward-looking. They didn't object to that. We came forward in this case has been narrowed to only this forward-looking claim. So none of the backward-looking parts even exist. And that's why we would say, if you reached it, somehow Rooker Feldman does apply because they did fail the England reservation. It's not a matter of the appeals court summary. It's that their own complaint actually recites, I believe it's in paragraphs 35 and paragraphs 39, but all they told the state court was that they still wanted to fight under the Ohio state constitution, not even a federal claim. And on top of that, they did seek review in the Ohio Supreme court. The link is online. They saw review of the excessive fine claim and of the backward-looking due process, Matthew's claim. They did litigate that they lost, but again, the court doesn't reach that as long as they're serious about saying we no longer seek backward-looking relief, then there's no Rooker issue for the court to review. And England only exists as a sub-issue to the Rooker issue. I have a question about rule 52 itself. I'm trying to follow up on what judge Boggs had said about this chilling of legitimate, I guess I'll call it legitimate or lawful dancing in the club. Where does the state draw the line as to what could be worn by a dancer or done by the dancer that would be lawful as opposed to what would be unlawful under rule 52? Sure. Well, the rule itself talks about sexual conduct, sexual activity, and also that you can't be completely nude. You have to keep certain minimal things on. Those substantive things I know have not only been upheld by the court in previous cases, but this court reiterated that in its panel decision. And my friend on the other side, to his credit, says we're not challenging where the content line, where the conduct line is being drawn as a matter of substantive law. They're saying they only don't like the process of how the Liquor Commission members decide what to impose. I also want to mention briefly, just to clean up the case, at a bare minimum, as a matter of standard sovereign immunity under Article III and as confirmed by the 11th Amendment, the claims against both agencies and the actual agencies' names fall away. The claim against the head of public safety, Tom Stickrath, also falls away because they don't allege anything in the citation side. They're only claiming that the commission members, and they named the chair, Deborah Price, that's the only piece that could survive. But even there, there's no imminent injury of an excessive fine being imposed on them. It's been seven years since the incident here. I don't see, and they also, to the extent that they appeal to the rhetoric of gentlemen's clubs being treated differently, I note that this court already upheld the dismissal two years ago of an equal protection claim on that basis, saying they haven't shown. Now, I know it's outside the record, but we do impose large fines in lieu of revocation on others who sell underage, whether they're not adult entertainment. We do have this fine in lieu of revocation. That happens all the time. Also, what about the argument of this statute imposing or giving unbridled discretion? That's the allegation of the complaint. Do you agree that the state has unbridled discretion in terms of the remedies that can be imposed or fines that can be imposed for violations of the statute? No, Your Honor. Largely, yes. There is great discretion. Once you find a violation, the agency is allowed to suspend, revoke, etc. The courts don't do a freestanding reasonableness review. What the courts do look at and what is a major constraint are constitutional challenges. We cite the Ohio Supreme Court in Clayton v. Board of Nursing, where the Supreme Court did look at, did you get due process? If you have a due process claim or an equal protection claim, the courts will look at that. What the courts will not look at is a freestanding reasonableness review of saying, well, sure, we sold to an underage buyer some alcohol, but the person was 19 or 20, not 15, and it was a fairly busy day. Those kinds of things of just should that get a 10-day suspension or a 30-day or full revocation, none of that is reviewed in the courts. That is a matter of state law, but I am not even sure what federal theory that falls under to have a substantive review for a couple of reasons. First, something like excessive fine only applies to my knowledge when there is an actual fine. This is an option to pay this forfeiture in lieu of revocation. The idea that this was a minor footfall that should not get full-fledged revocation, there is no substantive federal doctrine of proportionality for civil regulations of saying that is too big a punishment. Sure, there are process Matthews claims of I did not get to call a witness or I did not get enough notice, but they are not really making a process claim. They are making a substantive claim, and that is where they fail on eminence, but even if you reached it, what the district court said as a backup was that they do not state a Matthews claim because they are not asking for more process. They are not asking do the hearing this way. They are asking for our courts to review things a different way, but our courts do review constitutional challenges. There is no freestanding reasonableness review in Ohio courts. That is true, but that does not align with due process and it does not align with excessive fine. Again, they have the problem of eminence of they cannot try to claim a forward-looking relief, but then only talk about look what happened to us last time. They have to allege concretely that they will have an excessive fine someday, and I do not think you can do that. I do not think you can do a preenforcement challenge to how you might be punished if you commit a legal violation, and that is what the Supreme Court said in Lyons as well as in Clapper that you have to have eminent injury of the injury you are complaining. Sure, we grant to the extent that they were attacking last time backward they had standing. They failed for other reasons, but now that they are disclaiming that, they cannot really get over the standing hump. I also want to know briefly that they have paid the amount. They are not asking for that. The injunction, I am not sure what the injunction would look like. I am not sure what enforcement would look like. Would they run into the federal court and say they are about to hold this hearing? No, because they do not object to the process of what they object. We want the fine to only be $5,000, not $25,000. I am not sure how a federal court could look over the shoulder of a state agency about to go in the back room and do its deliberating to send out a decision two weeks later. I am not even sure what that injunction would look like, and I understand that the issue here is jurisdictional under 12B1, but that focus on what would that look like is what shows that there is no imminent injury for a federal court to try to head off. If they ever get hit with an excessive fine, just like if a prisoner is hit with an unfair sentence, then they do have back-end review and they have constitutional review. If what they are saying is we do not like that there is no freestanding reasonableness review as a matter of state law, that is not even a federal claim. That is a state law claim. Again, I urge the court to look at in the complaint, paragraph 35 and paragraph 39, where the England reservation is phrased in terms of the Ohio state constitution. That is not the 10th district rephrasing. That is the quote from their complaint of what they are saying they were reserving. There is really nothing left to this case. If for some reason the court thinks that the district court should have focused on the 12B6 rather than the 12B1 part, they could send instructions back in that regard to that effect. Again, here, as long as all they are complaining about is forward-looking and they are saying they are never going to commit anything again, there is nothing to enjoin. There is no Ex parte Young exception. There is nothing to do here. To the extent that they have backward-looking things, they have disclaimed it. They use the rhetoric of backward-looking of what happened in the past, but they ultimately say, to their credit, we are not asking for that anymore. That is why the case is mutated from where we were two years ago, where they were openly backward-looking. We had a different argument. Rooker and England, all that falls away once they concede that they are not doing the backward-looking part. If there are no further questions, I do not need the rest of my time. We ask the court to affirm, because there is nothing federal to do here, because they do not face any imminent injury of a failure to review an excessive fine in the Ohio courts if they were to do something wrong someday. Thank you. Thank you, Mr. Carney. Mr. Cicero, you are on mute. My apologies. Let me start by just clarifying this backward versus forward-looking argument. Let us be clear. In this case, we talk about the backward—if you want to call it that, I do not think that is appropriate—we talk about what happened in this case as being wrong, as the prototypical example of what is wrong. That is why this should never happen again to anybody else in the future. Now, that is what we are saying. If I was improperly— Is that solely focused on the amount of the fine? That is, if this federal court were to say, Ohio, you can do what you want, but you cannot fine in more than $2,000, would you be happy then? Or suppose we said, you cannot impose any fines, but you can still revoke their license, which you do not seem to be challenging revocation, per se, are you? Absolutely, because it is an impossible choice. You either pay this exorbitant fine, or you go out of business. Are you saying that a liquor control commission or a doctor board or, heaven forfend, a bar examiner cannot revoke people's license? Absolutely not. What is your gripe here? Our gripe is, one, the manner in which it was done. The forcing of an excessive fine or go out of business in violation of the Eighth Amendment. We could give you relief there. You would say you do not have to put any choice. They can just revoke it or not revoke it. I'm sure that that would stimulate much more litigation in a direct revocation scenario. I'm not sure that would exactly comply with due process. Each case would need to be analyzed on its own terms. This court, in its last decision, told the district court that Ohio was incorrect, that a liquor owner has a property interest in its liquor license. It is governed by the Eighth Amendment. You told the district court to analyze that. The district court did not do so. Let me interject a question here. I think it's along these lines. At the very outset of your damages here, is that correct? We are asking for declaratory and injunctive relief. Okay, so what do you mean in your prayer for relief, section D, awarding any and all actual consequential and special damages caused by defendant's conduct as described herein? What do you mean by that? Your Honor, it is the general catch-all provision that is seen in- You didn't really mean it. You just threw it in. Is that right? Like I said, it is a general catch-all provision. Anything else you just threw in here that we shouldn't be paying attention to? I'm disturbed by that. Equitable relief that is mentioned in that paragraph, Your Honor, would be injunctive and would be declaratory. To the extent that it's being determined to be broader and to encompass monetary, that would be in error. I'm not asking you to overlook anything. The provision is a catch-all. I believe it's the last sentence of the brief. If I could, the magistrate's decision in this case parsed out. If there's any monetary claim here, that's set to the side. That doesn't mean that we throw the whole case out. What remains is certainly valid. If there are no other questions, I see my time is up. I would thank you all. Thank you. Judge Batchelder, do you have any other follow-up? I do not. Okay. Judge Boggs? No. Okay. Thank you, counsel. We will take the case under submission. The clerk may adjourn the court. This honorable court is now adjourned.